PAXTON, Appellant,

v.

WAL–MART STORES, INC., Appellee.

[Cite as Paxton v. Wal–Mart Stores, Inc., 176 Ohio App.3d 364, 2008-Ohio-2487.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–07–1220.

Decided May 23, 2008.

Marvin A. Robon and R. Ethan Davis, for appellant.

Terry M. Brennan and David F. Proaño, for appellee.

HANDWORK, Judge.

{¶ 1} This case is before the court on appeal from the judgment of the Lucas County Court of Common Pleas, which granted summary judgment on June 6, 2007, in favor of appellee, Wal–Mart Stores, Inc. ("Wal–Mart"), and against appellant, William L. Paxton, and denied Paxton's motion for partial summary judgment as to liability against Wal–Mart. For the reasons that follow, we affirm the decision of the trial court.

{¶ 2} This case concerns property located in Toledo, Ohio, and owned by Paxton. In June 1996, Paxton entered into a real estate purchase agreement for the purchase of the property with Enviro, Inc. ("Enviro"), a Michigan corporation, which was owned by Thomas Schmoyer. Enviro intended to set up a new fluorescent lamp and high-intensity-discharge lamp ("HID") recycling facility on the property. Enviro had contacted the Ohio Environmental Protection Agency ("OEPA") regarding its intention to establish the recycling facility. In a letter dated May 24, 1996, the OEPA notified Enviro that its "proposed process for recycling mercury-containing lamps is recycling that is not subject to Ohio's hazardous waste requirements." The OEPA based its decision on Ohio Adm. Code 3745–51–02, which states that "a 'commercial product' or 'by-product' exhibiting a hazardous waste characteristic is not waste (and not a hazardous waste) if a business has it reclaimed." The OEPA stated that it considered "an off-specification or unused mercury-containing lamp to be a commercial product and a used lamp to be a by-product."

{¶ 3} On September 6, 1996, Wal–Mart contracted with Enviro to recycle, or otherwise dispose of, Wal–Mart's fluorescent and HID lamps and bulbs ("lamps") that contained spent mercury (the "lamp agreement"). Also, on October 10, 1996, Wal–Mart contracted to have Enviro recycle plastic and metal mini-blinds containing lead that Wal–Mart received at its return centers. In particular, Wal–Mart's lamp agreement with Enviro contained the following provisions:

{¶ 4} "1. *Agreement to Recycle Lamps.* Enviro agrees, from time to time to receive lamps from various stores and clubs, and to dispose of such Lamps in accordance with all applicable federal, state and local laws and regulations. * * *

{¶ 5} "5. ***Title To and Responsibility for Lamps.*** Title to, risk of loss of and responsibility for proper disposition of the Lamps shall pass from Wal–Mart to Enviro at such time as the Lamps are loaded and signed for by Enviro (or Enviro's agent or other representative) at Wal–Marts [sic] facility. Thereupon and at all times thereafter Enviro shall have sole and exclusive right to and responsibility for the Lamps and shall transport, handle, package, contain, store, identify, report, dispose of and in all others respects deal with and with regard to the Lamps in full compliance with any and all applicable federal, state and local laws, ordinances, rules, regulations, orders and other directives."

{¶ 6} Pursuant to the agreement, Enviro was paid by Wal–Mart to collect used lamps and mini-blinds from Wal–Mart and transport them to an appropriate facility, where they would be recycled or disposed of in a manner consistent with applicable law. Until December 17, 1998, Enviro retrieved tons of lamps and mini-blinds from Wal–Mart for disposal. The items received from Wal–Mart, however, were not recycled, but were merely crushed or shredded by Enviro and left piled on Paxton's property.

{¶ 7} In a letter dated September 3, 1998, Enviro was informed by the OEPA that the products and by-products (lamps and mini-blinds) received by Enviro were not considered "waste" only if the materials were reclaimed. The OEPA stated that as of July 23, 1998, "no recycling of any significance had taken place at the facility" and noted that the lamps had been stockpiled on the property. The fluorescent bulbs were tested and failed the toxicity characteristic leaching procedure for mercury. Therefore, the OEPA considered the stockpiled lamps to be hazardous waste and determined that the manner in which the materials were being piled on the property constituted "disposal." The OEPA ordered Enviro to stop "receiving hazardous waste from off-site in the form of fluorescent lamps and storing them without a hazardous waste permit." The OEPA also noted that Enviro had been "speculatively accumulating" lamps and vinyl blinds, thus causing these items to be considered "wastes." Enviro was ordered to "immediately cease accepting fluorescent lamps, HID lamps, and vinyl blinds at the facility, as receipt of more lamps and other materials only exacerbates the hazardous waste violations." Enviro was ordered to send the shredded lamps to a permitted hazardous-waste facility, a facility that was authorized to manage hazardous waste, or a facility that was in compliance with Ohio Adm.Code 3745–51–02(E)(1) or 3745–51–06. Wal–Mart was notified of this violation on or about November 10, 1998, but continued to transfer lamps pursuant to the lamp agreement until approximately December 17, 1998.

{¶ 8} On June 8, 2000, the state initiated suit in the Lucas County Court of Common Pleas against Enviro, its owner, and Paxton, in case No. CI00–2912. On June 18, 2003, the state amended its complaint to include Wal–Mart, against

which it asserted numerous violations of environmental regulations. Paxton also filed a third-party complaint against Wal–Mart. During the pendency of CI00–2912, Paxton cleaned up the property at his expense. The state dismissed its claims against Paxton and Wal–Mart on or about November 14, 2005. On February 28, 2006, the common pleas court dismissed Paxton's third-party claims against Wal–Mart without prejudice. Paxton sued Wal–Mart in this case on March 6, 2006, asserting the following causes of action: (1) contribution and indemnification, (2) violation of R.C. 3734.02(F), (3) negligent storage, treatment and disposal of solid and hazardous waste, (4) negligent contracting, (5) promissory estoppel, (6) breach of contract settlement, (7) unjust enrichment, and (8) violation of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").

{¶ 9} Wal–Mart filed a motion for summary judgment on March 15, 2007, and Paxton filed a motion for partial summary judgment on May 1, 2007. Responses and memoranda in opposition were filed by both parties. On June 6, 2007, the trial court granted Wal–Mart's motion for summary judgment and denied Paxton's motion, dismissing Paxton's complaint against Wal–Mart.

{¶ 10} Relevant to this appeal, the trial court determined Paxton's claims as follows. The trial court dismissed Paxton's indemnification claim because, at best, only an implied contract of indemnification could exist between Paxton and Wal–Mart. Since Paxton "was fully aware of Enviro's alleged inexperience in the Lamp recycling business and was also aware of Enviro's financial difficulties," the trial court·found that "Paxton does not meet the requisite standard of nonculpability or complete innocence necessary for the application of the principle of indemnification." Paxton's contribution claim was dismissed on the basis that he failed to comply with the statutory requirements concerning a "voluntary action" and, thus, was unable to recover pursuant to R.C. 3746.23(B). The trial court also found that Wal–Mart had not violated R.C. 3734.02(F), prohibiting anyone from storing, treating, disposing of, or transporting hazardous waste, because once the lamps were provided to Enviro at Wal–Mart's facility, pursuant to the lamp agreement, Enviro received title to the lamps and undertook sole and exclusive responsibility for transporting, handling, packaging, containing, storing, identifying, reporting, and disposing of the lamps. Alternatively, the trial court held that even if a genuine issue of material fact existed with respect to whether Wal–Mart had violated R.C. 3734.02(F), the court lacked jurisdiction over Paxton's claim because he had failed to comply with the notice requirement in R.C. 3734.101(B). With respect to negligence, the trial court held that "there is no authority under Ohio law for the proposition that a generator of solid or hazardous waste owes a duty of care to the owner of the property upon which a waste recycling facility was negligently operated by a party with whom the

generator contracted to recycle or otherwise dispose of its waste." The trial court also held that there is no authority in Ohio to support a "negligent contracting" cause of action.

{¶ 11} On appeal, Paxton raises the following assignments of error:

{¶ 12} "1. The trial court erred as a matter of law in dismissing appellant's common law claims for contribution against Wal–Mart.

{¶ 13} "2. The trial court erred as a matter of law in dismissing appellant Paxton's contribution claims pursuant to R.C. 3746.23(B).

{¶ 14} "3. The trial court erred as a matter of law in dismissing plaintiff's claims pursuant to R.C. 3734.02(F).

{¶ 15} "4. The trial court erred as a matter of law in dismissing appellant Paxton's claims pursuant to R.C. 3734.101.

{¶ 16} "5. The trial court erred as a matter of law in dismissing appellant's claims against Wal–Mart for negligence.

{¶ 17} "6. The trial court erred as a matter of law in denying appellant Paxton's motion for partial summary judgment as to liability against Wal–Mart."

{¶ 18} For clarity, we will consider Paxton's assignments of error out of order. This court notes at the outset that in reviewing a motion for summary judgment, we must apply the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).

{¶ 19} Paxton argues in his second assignment of error that the trial court erred in dismissing his contribution claim raised pursuant to R.C. 3746.23(B). With respect to this claim, the trial court held that Paxton could not seek contribution from Wal–Mart pursuant to R.C. 3746.23(B), because Paxton failed to comply with the statutory requirement of R.C. 3746.23(C), 3746.11, and 3746.04(B)(7), regarding the need to obtain a "no further action letter" when undertaking a "voluntary action." Having failed to prepare such a letter, the trial court held that it lacked jurisdiction over Paxton's contribution claim as it relates to any voluntary remedial activities.

{¶ 20} Paxton, however, argues that there is no requirement that a "no further action letter" be prepared as a prerequisite to bringing a civil claim. Rather, Paxton asserts that the language in R.C. 3746.23(C) merely sets forth a statute of limitations with respect to a contribution claim brought pursuant to R.C. 3746.23(B). Paxton asserts that he undertook a "voluntary action" as defined by

R.C. 3746.01(R) and is entitled to contribution from Wal–Mart for the expenses he incurred.

{¶ 21} A person who conducts a "voluntary action" with respect to property that has been contaminated with hazardous substances may recover costs of conducting the voluntary action in a civil action from any person who caused or contributed to the release of hazardous substances. R.C. 3746.23(B).[1] A civil action brought pursuant to R.C. 3746.23(B) shall be commenced in the court of common pleas of the county in which the property is located and "[t]he person conducting the voluntary action may commence the civil action at any time after the person has commenced the conduct of the voluntary action." R.C. 3746.23(C). R.C. 3746.23(C) also states that notwithstanding R.C. 2305.09, which provides for a four-year statute of limitations for tort actions, "a civil action shall be commenced under this section within three years after the applicable no further action letter was submitted to the director of environmental protection under section 3746.11 of the Revised Code in connection with the voluntary action."

{¶ 22} Initially, because the property was required to close pursuant to R.C. Chapter 3734, we find that R.C. 3746.23(B) is not available to Paxton as a means to recover contribution from Wal–Mart. See R.C. 3746.02(A)(2). Notwithstanding, we additionally find that the trial court correctly held that Paxton was required to prepare and submit a "no further action letter" in order to pursue contribution pursuant to R.C. 3746.23(B).

{¶ 23} Although we agree that R.C. 3746.23(C) merely sets forth the applicable statute of limitations for a cause of action brought to recover costs associated

---

1.  {¶ a} R.C. 3746.23(B) states:

{¶ b} "Any person who, at the time when any of the hazardous substances identified and addressed by a voluntary action conducted under this chapter and rules adopted under it were released at or upon the property that is the subject of the voluntary action, was the owner or operator of the property, and any other person who caused or contributed to a release of hazardous substances at or upon the property, is liable to the person who conducted the voluntary action for the costs of conducting the voluntary action. If the person who conducted the voluntary action did not cause or contribute to any release of hazardous substances at or upon the property that were identified and addressed by the voluntary action, he may recover in a civil action the costs of conducting the voluntary action from the owners or operators of the property at the time when those releases occurred and the other persons who caused or contributed to the releases. If the person who conducted the voluntary action caused or contributed to any release of hazardous substances at or upon the property that were identified and addressed by the voluntary action, he may recover in a civil action from the owners and operators of the property when those releases occurred and the other persons who caused or contributed to the releases the costs of conducting the voluntary action that are attributable to the releases that those owners, operators, and others caused or contributed to.

{¶ c} "If two or more persons are found to have caused or contributed to a release of hazardous substances at or upon the property, the costs of conducting the voluntary action shall be apportioned among each such person on the basis of his respective degree of responsibility for the costs."

with conducting a voluntary action, we nevertheless find that Paxton can recover under R.C. 3746.23(B) only if the action he took constitutes a "voluntary action" in accordance with the governing statutes. See R.C. 3746.10(D) ("voluntary actions * * * shall be undertaken in compliance with all applicable laws of this state and rules adopted under them * * *.")

{¶ 24} R.C. 3746.01(R) defines "voluntary action" as "a series of measures that may be undertaken to identify and address potential sources of contamination of property by hazardous substances or petroleum and to establish that the property complies with applicable standards." It further states that " '[v]oluntary action' may include, without limitation, a phase I property assessment * * *, a phase II property assessment * * *, a sampling plan, a remedial plan, *or remedial activities followed by the issuance of a no further action letter* under section 3746.11 of the Revised Code indicating that the property meets applicable standards upon demonstration by the person undertaking the measures either that there is no information indicating that there has been a release of hazardous substances or petroleum at or upon the property or that there has been a release of hazardous substances or petroleum at or upon the property and that applicable standards were not exceeded or have been or will be achieved in accordance with this chapter and rules adopted under it." (Emphasis added.) R.C. 3746.01(R). R.C. 3746.10(A) also describes a "voluntary action" and sets forth specific requirements that must be followed by a person who is participating in the voluntary-action program:

{¶ 25} "A person who is participating in the voluntary action program under this chapter and rules adopted under it shall do both of the following:

{¶ 26} "(a) Utilize the services of a certified laboratory to perform any analyses that form the basis for the issuance of a no further action letter for a property and ensure that a laboratory performs in connection with a voluntary action only those analyses for which it is certified under rules adopted under division (B)(6) of section 3746.04 of the Revised Code or for which it is qualified prior to the adoption of those rules;

{¶ 27} "(b) Utilize the services of a certified professional to verify that the property and any remedial activities undertaken at the property in connection with a voluntary action comply with applicable standards and, if those standards are met, to issue to the person a no further action letter for the property. For the purposes of such a verification, the certified professional shall perform and review all work that was conducted to support the request for the no further action letter or shall ensure that the work has been performed and reviewed by other persons with expertise and competence in areas other than those of the certified professional's expertise and competence as necessary for the issuance of the no further action letter." R.C. 3746.10(B)(1).

{¶ 28} Based on the foregoing statutory requirements, in order for Paxton's conduct to be considered a "voluntary action," thereby entitling him to contribution from Wal–Mart pursuant to R.C. 3746.23(B), we find that Paxton was required to obtain a "no further action letter." Because Paxton did not comply with the statutory requirements in R.C. Chapter 3746, "Voluntary Clean-up of Contaminated Property," we find that Wal–Mart was entitled to summary judgment on Paxton's contribution claim brought pursuant to R.C. 3746.23(B). Accordingly, we find Paxton's second assignment of error not well taken.

{¶ 29} Paxton argues in his third and fifth assignments of error that the trial court erred in dismissing his claims based upon Wal–Mart's violations of R.C. 3734.02(F) and the rules and regulations applying to "generators of hazardous waste," as promulgated pursuant to R.C. 3734.12. Paxton argues that because the material transferred by Wal–Mart to Enviro eventually was considered to be hazardous waste, due to the manner in which it was stockpiled on the property, Wal–Mart was liable for storing or disposing of hazardous waste on the property. Also, because Enviro was not permitted to store hazardous waste, Paxton argues that Wal–Mart was in violation of R.C. 3734.02(F) [2] by transporting hazardous waste to Enviro. Paxton further argues that as a generator of hazardous waste, Wal–Mart was negligent in failing to ensure that Enviro recycled the materials and/or did not stockpile the materials in such a manner as to create hazardous waste. Overall, Paxton argues that the trial court's decision violates public policy because, as a generator of hazardous waste, Wal–Mart has a continuing duty to properly dispose of the hazardous waste it generated and cannot transfer that duty to Enviro.

{¶ 30} Initially, we note that contrary to Paxton's argument, the trial court did not make a factual finding that Enviro was a licensed hazardous-waste facility. Rather, the trial court found that pursuant to the lamp agreement, title transferred to Enviro when the lamps were loaded and signed for by Enviro (or

---

2. {¶ a} R.C. 3734.02(F) states:

{¶ b} "No person shall store, treat, or dispose of hazardous waste identified or listed under this chapter and rules adopted under it, regardless of whether generated on or off the premises where the waste is stored, treated, or disposed of, or transport or cause to be transported any hazardous waste identified or listed under this chapter and rules adopted under it to any other premises, except at or to any of the following:

{¶ c} "(1) A hazardous waste facility operating under a permit issued in accordance with this chapter;

{¶ d} "(2) A facility in another state operating under a license or permit issued in accordance with the "Resource Conservation and Recovery Act of 1976," 90 Stat. 2806, 42 U.S.C.A. 6921, as amended;

{¶ e} "(3) A facility in another nation operating in accordance with the laws of that nation;

{¶ f} "(4) A facility holding a permit issued pursuant to Title I of the "Marine Protection, Research, and Sanctuaries Act of 1972," 86 Stat. 1052, 33 U.S.C.A. 1401, as amended;

{¶ g} "(5) A hazardous waste facility as described in division (E)(3)(a) or (b) of this section."

Enviro's agent or other representative) at Wal–Mart's facility. As soon as Enviro took possession of the materials, Enviro had the "sole and exclusive right to and responsibility for the Lamps" and agreed to "transport, handle, package, contain, store, identify, report, dispose of and in all others respects deal with and with regard to the Lamps in full compliance with any and all applicable federal, state and local laws, ordinances, rules, regulations, orders and other directives." Thus, the trial court held that Wal–Mart did not "store, treat, or dispose of hazardous waste" because Enviro, not Wal–Mart, was responsible for the materials when they arrived at the property.

{¶ 31} We agree with the trial court. According to the OEPA's May 24, 1996 letter to Enviro, the material that Enviro received from Wal–Mart was "a 'commercial product' or 'by-product' exhibiting a hazardous waste characteristic," but was "not waste (and not a hazardous waste) if a business has it reclaimed." For that reason, Enviro did not need to obtain a permit to receive the lamps from Wal–Mart. Wal–Mart wanted the materials to be recycled, paid for them to be recycled, and transferred ownership of the materials to Enviro to be disposed of in accordance with the law. Only when Enviro unlawfully stockpiled the lamps on the property did the material become hazardous waste. Therefore, we find that at the time Wal–Mart caused the lamps and blinds to be transported to Enviro, the materials were not hazardous waste, but were merely commercial products and by-products. We therefore find that Wal–Mart did not violate R.C. 3734.02(F) by transporting, or causing to be transported, hazardous waste to an unlicensed hazardous waste facility.

{¶ 32} We also find that Wal–Mart did not violate R.C. 3734.02(F) by storing, treating, or disposing of "hazardous waste identified or listed under this chapter." The term "store," when used in connection with hazardous waste, means "the holding of hazardous waste for a temporary period in such a manner that it remains retrievable and substantially unchanged physically and chemically and, at the end of the period, is treated; disposed of; stored elsewhere; or reused, recycled, or reclaimed in a beneficial manner." R.C. 3734.01(M). As used in R.C. 3734.02(F), the term "treat" means "any method, technique, or process designed to change the physical, chemical, or biological characteristics or composition of any hazardous waste * * *." R.C. 3734.01(K). "Disposal" is defined as "the discharge, deposit, injection, dumping, spilling, leaking, emitting, or placing of any solid wastes or hazardous waste into or on any land or ground or surface water or into the air * * *." R.C. 3734.01(F).

{¶ 33} Wal–Mart transferred ownership of lamps and mini-blinds to Enviro when these items were not yet considered to be hazardous waste. Enviro crushed and shredded the material and stockpiled it on the property. Wal–Mart had no part in Enviro's decision to stockpile the material, rather than recycle it,

and did not retain, possess, control, or own the material when it was stored and/or treated by Enviro and became hazardous waste.

{¶ 34} Having found that Wal–Mart did not cause the lamps to be improperly stockpiled, thereby rendering them hazardous waste, we find not well taken Paxton's arguments that Wal–Mart is liable because it was a "generator of hazardous waste." We also find that the alleged environmental violations brought against Wal–Mart by the OEPA in case number CI00–2912 were never established, are not part of this case, and cannot form a basis for Paxton's claims against Wal–Mart. Accordingly, we find that Wal–Mart is not liable to Paxton for having violated R.C. 3734.16[3] or any environmental rule or regulation promulgated pursuant to R.C. 3734.12.

{¶ 35} Paxton, however, argues that "Wal–Mart had an ongoing and non-delegable duty to ensure that its potentially hazardous waste was being properly and legitimately recycled to prevent it from becoming 'hazardous waste' under Ohio's speculative accumulation rule" and that it was negligent in failing to do so. Paxton also argues that to allow Wal–Mart to be relieved of its duties by transferring ownership of the materials to Enviro is against public policy. We find that Paxton's arguments are without legal support. We find no authority, and Paxton cites none, for his argument that Wal–Mart is prohibited from transferring title of nonhazardous materials for the purpose of recycling or other lawful disposal. There is also no authority for the proposition that Wal–Mart has an ongoing duty to monitor "potentially hazardous waste" once transferred to another company. We further find that allowing Wal–Mart to contractually transfer materials that at the time are not hazardous does not violate public policy.

{¶ 36} Based on the foregoing, we find that Wal–Mart was entitled to summary judgment on Paxton's causes of action alleging negligence and violations of R.C. 3734.02(F). Paxton's third and fifth assignments of error are therefore found not well taken.

{¶ 37} Paxton argues in his fourth assignment of error that the trial court erred in dismissing his cause of action against Wal–Mart for violations of R.C. Chapter 3734, raised pursuant to R.C. 3734.101(A). In particular, Paxton argues that the trial court erred in finding that he failed to satisfy the notice require-ments of R.C. 3734.101(B).

---

**3.** Paxton never pleaded a violation of R.C. 3734.16 in his complaint. Nevertheless, because he raised R.C. 3734.16 for our consideration in his reply brief on appeal, we find that even if his complaint could be construed to have included an action based upon R.C. 3734.16, he failed to establish Wal–Mart's liability pursuant to this statute.

{¶ 38} R.C. 3734.101(A) allows any person aggrieved or adversely affected by an alleged violation of R.C. Chapter 3734 to commence a civil action against any person who is alleged to be in violation. Notwithstanding the trial court's determination that Paxton failed to comply with the notification requirements set forth in R.C. 3734.101(B), based upon our determination of Paxton's third and fifth assignments of error, we find that Paxton failed to establish a violation pursuant to R.C. Chapter 3734. Accordingly, we find that Paxton is not entitled to recover damages pursuant to R.C. 3734.101(E) and that summary judgment was appropriately granted to Wal–Mart. Paxton's fourth assignment of error is therefore found not well taken.

{¶ 39} Paxton argues in his first assignment of error that the trial court erred in granting Wal–Mart summary judgment with respect to his common-law contribution claims. Paxton asserts that R.C. 3734.10 preserves his equitable and common-law claims for contribution that are independent of his claims for relief pursuant to R.C. 3746.23(B) and 3734.02(F). Paxton claims that he is entitled to contribution from Wal–Mart because as a "generator of hazardous waste," Wal–Mart has cradle-to-grave responsibility for the ultimate disposal of its hazardous waste and is liable for hazardous waste that is not properly disposed of, regardless of intervening or superseding acts by other persons. In particular, Paxton relies on *State ex rel. Celebrezze v. Specialized Finishers, Inc.* (1991), 62 Ohio Misc.2d 516, 604 N.E.2d 842, to argue that "[a] private citizen who has been damaged by or believes that others will be damaged by failure to comply with Ohio's environmental law is the public qua public and is within his rights to seek enforcement and/or any remedy available under Ohio law."

{¶ 40} In response to Paxton's first assignment of error, Wal–Mart argues that Paxton waived his right to litigate the question of whether he had a common-law claim for contribution against Wal–Mart by failing to expressly assert such a claim in his complaint and by failing to raise his alleged common-law right to contribution in the motions for and responses to summary judgment. Rather, Wal–Mart asserts that "Paxton has raised the issue of a common law contribution claim vis-à-vis R.C. 3734.10 for the first time in his appellate brief." Thus, the trial court considered only Paxton's contribution claim that ostensibly arose under R.C. 3746.23.

{¶ 41} Alternatively, if this court finds that Paxton preserved a common-law contribution claim to be raised on appeal, Wal–Mart asserts that Paxton's claim fails because common-law contribution is not allowed between concurrent joint tortfeasors. Wal–Mart relies on *MetroHealth Med. Ctr. v. Hoffmann–LaRoche, Inc.* (1997), 80 Ohio St.3d 212, 214, 685 N.E.2d 529, which held:

{¶ 42} "At common law, contribution was 'the right of a person who has been compelled to pay what another should have paid in part to require partial (usually

proportionate) reimbursement and [arose] from principles of equity and natural justice.' *Travelers Indemn. Co. v. Trowbridge* (1975), 41 Ohio St.2d 11 [70 O.O.2d 6, 321 N.E.2d 787], * * * paragraph two of the syllabus, overruled on other grounds in *Motorists Mut. Ins. Co. v. Huron Rd. Hosp.* (1995), 73 Ohio St.3d 391 [653 N.E.2d 235], * * *. However, contribution was not allowed between concurrent or joint tortfeasors. Id. at 15 [70 O.O.2d 6, 321 N.E.2d 787], * * *."

{¶ 43} Wal–Mart asserts that the trial court found Paxton culpable, or not completely innocent, "because [Paxton] was fully aware of Enviro's alleged inexperience in the Lamp recycling business and was also aware of Enviro's financial difficulties." Wal–Mart asserts that Paxton testified that he regularly visited the property and monitored Enviro's use of the property and, thus, "even if Wal–Mart somehow was responsible for the environmental contamination at the property, Paxton cannot assert a common law contribution claim against Wal–Mart because Paxton bears some of the responsibility of the contamination."

{¶ 44} In reply, Paxton asserts that he raised a common-law contribution claim in the first count of his complaint at paragraphs 32 and 33, which state:

{¶ 45} "32. Paxton is also entitled to contribution from Wal–Mart for the cleanup costs that Paxton incurred to cleanup the hazardous and solid waste and regular waste generated by Wal–Mart, along with loss of rents, insurance, and real estate tax costs and legal fees totaling over $850,000.00.

{¶ 46} "33. Paxton is entitled to indemnification and contribution equal to the amount spent or lost by him from Wal–Mart."

{¶ 47} Paxton asserts that the trial court dismissed Paxton's first cause of action to the extent that it was based on CERCLA, his right to indemnification, and R.C. 3746.23(B), but failed to acknowledge his common-law claim for contribution. Paxton further asserts that although the trial court acknowledged that it did not have jurisdiction to enforce federal CERCLA law, it failed to acknowledge R.C. 3734.16, which governs liability of generators of hazardous waste.

{¶ 48} Assuming arguendo that Paxton raised a claim for common-law contribution in his complaint against Wal–Mart, we nevertheless find that the trial court correctly dismissed Paxton's contribution claim. Paxton argues that R.C. 3734.10 preserves his equitable and common-law claims for contribution. R.C. 3734.10 grants certain governmental entities, such as the attorney general, prosecuting attorney, city director of law, or village solicitor, authority to prosecute for environmental violations. R.C. 3734.10, however, states that "[t]his chapter does not abridge rights of action or remedies in equity, under common law, or as provided by statute or prevent the state or any municipal corporation or person in the exercise of their rights in equity, under common law, or as provided by statute to suppress nuisances or to abate or prevent pollution."

Additionally, we note that R.C. 3734.101(F) states that "[n]othing in this section restricts any right that any person or class of persons may have under any statute or common law to seek enforcement of this chapter or rules, permits, licenses, variances, or orders issued or adopted under it or to seek any other relief."

{¶ 49} We find that although R.C. 3734.10 and 3734.101(F) recognize that statutory enforcement of environmental laws does not destroy a person's rights in equity, at common law, they do not create a common-law recovery cause of action for contribution for environmental clean-up costs. Rather, these statutory sections merely state that if an equitable common-law claim exists, prosecution for environmental violations does not destroy that claim.

{¶ 50} Paxton argues that his common-law claim resides in the fact that as a "generator of hazardous waste," Wal–Mart has cradle-to-grave responsibility for the ultimate disposal of its hazardous waste and is liable for hazardous waste that is not properly disposed of. Asserting that he is a citizen who has been damaged by Wal–Mart's failure to comply with Ohio's environmental law, Paxton argues that as "the public qua public," he is within his rights to seek enforcement and/or any remedy available under Ohio law. See *Specialized Finishers, Inc.*, 62 Ohio Misc.2d 516, 604 N.E.2d 842.

{¶ 51} With respect to *Specialized Finishers*, we find that Paxton's reliance on this case is misplaced. In *Specialized Finishers*, the trial court granted plaintiff's contribution claim, but only on the basis that the parties had entered into an agreement that they would all be liable for the cost of clean-up. We note that no such agreement was entered into between Paxton and Wal–Mart. Additionally, *Specialized Finishers* did not concern a situation in which a third-party contributed waste or material to the subject property; rather, hazardous waste was generated on the property in *Specialized Finishers* as a byproduct of the electroplating business that took place on that property. Thus, we find that *Specialized Finishers* is factually distinguishable from the present case, does not recognize a common-law contribution claim, and does not support Paxton's argument on appeal.

{¶ 52} As discussed above, we find that Paxton failed to establish a genuine issue of material fact with respect to whether Wal–Mart was a generator of hazardous waste, was liable as such, was negligent, or otherwise violated any Ohio environmental statute. Accordingly, we find that Wal–Mart was entitled to summary judgment on Paxton's contribution cause of action, based either in common-law principles or upon alleged statutory violations. Paxton's fourth assignment of error is therefore found not well taken.

{¶ 53} Paxton argues in his sixth assignment of error that the trial court erred as a matter of law in denying his motion for partial summary judgment as to liability against Wal–Mart. Based upon our determination of the foregoing assignments of error, we find Paxton's sixth assignment of error not well taken.

{¶ 54} On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.

Judgment affirmed.

SINGER and OSOWIK, JJ., concur.